Wade C. TALLMAN and Craig
M. Diffie, Appellants,

v.

Jesse BROWN, Secretary of Veterans
Affairs, Appellee.

Nos. 92–1506, 93–49.

United States Court of Veterans Appeals.

Decided March 17, 1995.

454

Wade C. Tallman, pro se.

Craig M. Diffie, pro se.

Mary Lou Keener, Gen. Counsel, Norman G. Cooper, Asst. Gen. Counsel, David W. Engel, Deputy Asst. Gen. Counsel, and Michael P. Butler, were on the brief for appellee.

Before NEBEKER, Chief Judge, and FARLEY and HOLDAWAY, Judges.

FARLEY, Judge:

Appellants Wade C. Tallman and Craig M. Diffie, both 1978 graduates of the United States Naval Academy, appeal from decisions of the Board of Veterans' Appeals (BVA or Board) dated November 17, 1992, and September 25, 1992, respectively, which denied entitlement to payment of educational assistance benefits under Public Law 101–366, Title II, § 207, 104 Stat. 442 (Aug. 15, 1990), as amended by Public Law 102–83, § 5(c)(2), 105 Stat. 406 (Aug. 6, 1991) (currently found at 38 U.S.C. § 3222 note). (For ease of reference, this statute will be referred to hereinafter as section 207 or § 207.) Each appellant contends that he is entitled under the provisions of § 207 to educational assistance under chapter 34 of title 38 of the U.S.Code despite his previous receipt of tuition assistance from the Department of the Navy.

By order dated February 28, 1994, the Court, upon a motion by the Secretary, consolidated these two related cases for appellate review. In a decision dated August 22, 1994, this Court reversed the decision of the Board in each of these consolidated appeals. The Board had denied both of the appellants' claims for educational assistance based upon its conclusion that 38 C.F.R. § 21.4025 (1991) precluded the payment of such assistance where, as in the case of each of the appellants, their military service department had "paid for [their courses] in whole or in part." 38 C.F.R. § 21.4025(b)(1). In reversing, this Court found that neither the regulation relied upon by the Board, 38 C.F.R. § 21.4025, nor the corresponding statute, 38 U.S.C. § 3681, was applicable to the claims of the appellants, which were governed, not by chapter 34 of title 38, but by a freestanding statute, § 207.

On September 6, 1994, the Secretary filed a motion for reconsideration of the August 22, 1994, panel decision. The essence of the Secretary's position, which was advanced for

the first time in his motion for reconsideration, was that 38 C.F.R. §§ 21.4700–.4705, and particularly 38 C.F.R. §§ 21.4703(b) and 21.4704(a), make the limitations of 38 U.S.C. § 3681(a) applicable to the appellants' claims. Although these regulations were promulgated on December 3, 1992, a date subsequent to each of the BVA decisions on appeal, they, and the interpretation of § 207 contained therein, were proposed on April 21, 1992. *See* 57 Fed.Reg. 14,488–90 (Apr. 21, 1992). When promulgated, the regulations were made retroactively effective to August 15, 1990. *See* 57 Fed.Reg. 57,101 (1992). In an order dated September 29, 1994, the motion of the Secretary for reconsideration was granted, the panel decision dated August 22, 1994, was vacated, and the parties were instructed to submit additional briefs. For the reasons set forth below, the Court will affirm both BVA decisions.

## I. BACKGROUND

### A. Appellant Wade C. Tallman

Appellant Tallman (Tallman) graduated from the United States Naval Academy in June 1978. Record (R.) at 17. He is currently, and since his graduation from the Naval Academy has at all times been, on active duty. After attending the Naval War College in Newport, Rhode Island, Tallman attended Salve Regina College (Salve Regina), where he took three courses which were paid for, in part, through tuition assistance from the Navy. R. at 13–15. Tallman received a Master of Arts (M.A.) degree from Salve Regina in May 1990. R. at 16.

In a letter to a VA regional office (RO) dated November 1991, Tallman noted that because tuition assistance covered only part of the cost of his M.A. coursework, there was an unreimbursed balance of $703.50. R. at 8. He asserted that chapter 34 benefits would have covered the entire amount of his graduate coursework and therefore requested reimbursement for the $703.50 balance. Tallman attached to his letter a VA Application for Education Benefits, claiming entitlement to such reimbursement under the provisions of newly enacted § 207. R. at 9–11. In December 1991, the RO advised Tallman that his claim had been denied, informing him

that "[p]ayment of education assistance is prohibited if a unit or courses are being paid for in whole or in part by the Armed Forces during any period a veteran is on active duty." R. at 19–20.

In December 1991, Tallman filed a Notice of Disagreement (NOD). The RO provided him with a Statement of the Case (SOC) in April 1992. R. at 22–25. Under "Reasons for Decision," the SOC stated, "Chapter 34 benefits would not have been payable to the serviceperson at the time he took the courses if he also received Naval Tuition Assistance. The law does not allow payment under § 207 for any training for which Chapter 34 benefits would not have been payable." R. at 25. Tallman filed a VA Form 1–9 (APPEAL TO BOARD OF VETERANS' APPEALS) in May 1992 (R. at 30–31); on the form, he contended: (1) had he been eligible for chapter 34 benefits at the time he was pursuing his master's program, he would not have elected Navy tuition assistance; (2) had he been eligible for chapter 34 benefits and used them, he would not have had any unreimbursed out-of-pocket expenses; and (3) Congress' intent in enacting § 207 was to give 1977 and 1978 service academy graduates "their *full* and *justified* Veteran Benefits, not to deprive them because of a probably unknown code in the Federal Reg[ulations]." R. at 31.

In its November 17, 1992, decision currently on appeal to this Court, the BVA denied Tallman's claim of entitlement to an award of benefits under § 207. As reasons or bases for its decision, the BVA noted:

The Board observes that 38 C.F.R. § 21.4025(b) (1991) prohibits educational assistance benefits under Chapter 34 for a program which is being paid for in whole or *in part* by the Armed Forces. Public Law 101–366, Section 207, did not provide more educational assistance benefits to its recipients than to recipients of educational assistance benefits under Chapter 34. In this case, the appellant's costs of education for his Master's degree were being paid *in part* by the Navy. Therefore, the appellant cannot be reimbursed for the difference between the tuition assistance he re-

ceived and the benefits payable to eligible claimants under Chapter 34.

R. at 5–6. A timely appeal to this Court followed.

### B. Appellant Craig M. Diffie

Appellant Diffie (Diffie) graduated from the United States Naval Academy in June 1978. R. at 9–10. He is currently, and since his graduation from the Naval Academy has at all times been, on active duty. From May 1988 through March 1990, Diffie attended the University of Southern California (USC). R. at 11–19, 21. He received a Master of Science degree in systems management in March 1990. R. at 23. Diffie received $3905.50 in Navy tuition assistance for his graduate coursework tuition, the cost of which totalled $8361. R. at 11–19, 21. In a letter to the RO dated June 1991, Diffie noted that although Navy tuition assistance covered part of the cost of his coursework, he would have been eligible for $5640 under chapter 34. R. at 21. Diffie requested reimbursement of the difference between the $3905.50 he received from tuition assistance and the $5640 he claimed he would have received under chapter 34; he attached a VA Application for Education Benefits, claiming entitlement to benefits under newly enacted § 207. R. at 21–24. In September 1991, the RO advised Diffie that his claim had been denied, noting that "[t]he available evidence shows that you received tuition assistance from the military for the same enrollment period for which you seek assistance. This is considered to be a duplication of benefits." R. at 7.

Diffie filed an NOD in October 1991 (R. at 26), and the RO provided him with a Statement of the Case in January 1992. Under "Reasons for Decision," the SOC provided in pertinent part:

It has been determined from the evidence that the claimant received educational assistance from the United States Navy for the course in which he wishes to claim educational assistance under Section 207. If the claimant has taken courses during the applicable period for which tuition assistance was not received, he should have the certifying official of the school ...

submit an enrollment certification for that training.

R. at 30. Diffie filed a VA Form 1–9 shortly thereafter. R. at 32. In June 1992, he appeared at a personal hearing before a section of the Board. R. at 37–43. During that hearing, he reiterated that had he been eligible for chapter 34 benefits at the time of his graduate coursework, he would have elected such benefits rather than the lower-paying Navy tuition assistance. R. at 39.

In its September 25, 1992, decision currently on appeal to this Court, the BVA denied Diffie's claim of entitlement to educational assistance under § 207. R. at 2–6. As reasons or bases for its decision, the BVA noted:

The Board observes that 38 C.F.R. § 21.4025(b) (1991) prohibits educational assistance benefits under Chapter 34 for a program which is being paid for in whole or *in part* by the Armed Forces. The regulation applies to those who were eligible for Chapter 34. (Chapter 34 program ended December 31, 1989. 38 U.S.C.A. § 3462(e) (West 1991)). Public Law 101–366, Section 207 did not confer more benefits to those eligible under it than existed for the Chapter 34 recipients. In this case, the appellant's costs of education for his Master's degree were being paid *in part* by the Navy. Therefore, the appellant cannot be reimbursed for the difference between the tuition assistance he received and the benefits payable to eligible claimants under Chapter 34.

R. at 5. Diffie timely appealed to this Court.

## II. STATUTES AND REGULATIONS

These two consolidated appeals present an issue of statutory interpretation of § 207. Before examining the specific language of § 207 and regulations implementing that program, there will be a brief discussion of the statutory provisions and the corresponding VA educational assistance programs affected by § 207, which the regulations govern. These statutory provisions consist of the Vietnam-era GI Bill (codified at chapter 34 of title 38, U.S.Code) and the Post–Vietnam Era Veterans Educational Assistance Pro-

gram (VEAP) (codified at chapter 32 of title 38, U.S.Code).

### A. The Original Chapter 34 Educational Assistance Program

Chapter 34 of title 38, U.S.Code was originally enacted by Congress in 1966 for the expressed purpose of:

(1) enhancing and making more attractive service in the Armed Forces of the United States, (2) extending the benefits of a higher education to qualified and deserving young persons who might not otherwise be able to afford such an education, (3) providing vocational readjustment and restoring lost educational opportunities to those service men and women whose careers have been interrupted or impeded by reason of active duty after January 31, 1955, and (4) aiding such persons in attaining the vocational and educational status which they might normally have aspired to and obtained had they not served their country.

Pub.L. No. 89–358, 80 Stat. 12, § 1651 (1966) (codified at 38 U.S.C. § 3451). Under chapter 34, each eligible veteran was entitled to educational assistance from VA for a specified period based upon the veteran's period of service on active duty, with a maximum entitlement of 45 months. *See* 38 U.S.C. § 3461. Since enactment in 1966, however, chapter 34 benefits have been administered with a specific statutory limitation designed to prohibit the duplication of federal educational assistance. The limiting statute currently provides in relevant part:

No educational assistance allowance granted under chapter ... 34 ... of this title ... shall be paid to any eligible person (1) who is on active duty and is pursuing a course of education which is being paid for by the Armed Forces....

38 U.S.C. § 3681(a). The earlier statute prohibited payment of an "educational assistance allowance ... under chapter 34 ..." which "would constitute a duplication of benefits paid from the Federal Treasury...." Pub.L. No. 89–358, § 3(b), 80 Stat. 23, § 1781 (1966). Section 3681 is authority for a VA regulation, entitled "Nonduplication; Federal programs," which provides in pertinent part

and has so provided since 1988 when the appellants commenced taking the courses in question:

Chapter 34. Payment of educational assistance allowance is prohibited to an otherwise eligible veteran:

(1) For a unit course or courses which are being paid for in whole or in part by the Armed Forces during any period he or she is on active duty....

38 C.F.R. § 21.4025(b) (1994).

### B. Chapter 32 Educational Assistance Program

In 1976, Congress enacted chapter 32 of title 38 of the U.S.Code, and it essentially closed off entitlement to the Vietnam-era GI Bill (chapter 34 program) for all those who entered active duty after December 31, 1976, with certain enumerated exceptions, and instead made those veterans eligible for educational assistance under the new chapter 32 educational assistance provisions. Pub.L. No. 94–502, Title IV, § 404, 90 Stat. 2393, § 1601 (Oct. 15, 1976) (codified as amended at 38 U.S.C. § 3201).

In contrast to the chapter 34 program which did not require any monetary contributions on the part of the eligible individual, under chapter 32, eligible individuals could agree to have a monthly deduction taken from their military pay, subject to specific amount limitations, deposited in an account entitled the "Post–Vietnam Era Veterans Education Account" (VEAP Account). The Department of Defense, in turn, would match contributions to VEAP Accounts on a $2 to $1 ratio. *See* 38 U.S.C. § 3222. It is undisputed by the Secretary and the appellants that the noncontributory chapter 34 benefit program generally provided a higher level of educational assistance than that offered through the contributory chapter 32 program.

### C. Revised Chapter 34 Educational Assistance Program

Upon enactment of the new chapter 32 program, an "eligible veteran" for purposes of the existing chapter 34 benefits was thereafter defined as a veteran who:

(A) served on active duty for a period of more than 180 days, any part of which occurred after January 31, 1955, and before January 1, 1977, and was discharged or released therefrom under conditions other than dishonorable; or

(B) contracted with the Armed Forces and was enlisted in or assigned to a reserve component prior to January 1, 1977, and as a result of such enlistment or assignment served on active duty for a period of more than 180 days, any part of which commenced within 12 months after January 1, 1977, and was discharged or released from such active duty under conditions other than dishonorable; or

(C) was discharged or released from active duty, any part of which was performed after January 31, 1955, and before January 1, 1977, or following entrance into active service from an enlistment provided for under clause (B) of this paragraph, because of a service-connected disability.

38 U.S.C. § 3452(a)(1). For purposes of subsection (a)(1)(A) above, the term "active duty" did not include "any period during which an individual ... served as a cadet or midshipman at one of the service academies." 38 U.S.C. § 3452(a)(3).

As indicated by 38 U.S.C. § 3452(a)(1)(B), *supra*, in enacting chapter 32 (and closing off the chapter 34 program), Congress provided an exception preserving chapter 34 eligibility for those who entered active duty after January 1, 1977, but who had (1) previously contracted with the Armed Forces and were enlisted in or assigned to a reserve component before January 1, 1977, and (2) entered active duty within 12 months after that date. *See* 38 U.S.C. § 3452(a)(1)(B). Accordingly, pursuant to that grandfather clause, Senior Reserve Officers' Training Corps (SROTC) participants who graduated from college in 1977 and entered active duty by December 31, 1977, met the requirements for entitlement to assistance under chapter 34. Service academy graduates of the class of 1977, however, who at the end of their second year of college in 1975 had entered into contracts committing them to enter active duty did not meet the requirements of the grandfather clause because they had not enlisted in or

been assigned to a reserve component before January 1, 1977. Similarly, 1978 SROTC and service academy graduates who in 1976 entered into contracts committing themselves to enter active duty, also did not receive chapter 34 eligibility because neither had entered active duty before January 1, 1977, and, in the case of the latter, also because they had not joined a reserve component before that date. Rather, such 1978 SROTC and 1977 and 1978 service academy graduates were limited to seeking educational assistance from VA under the newly enacted chapter 32 program provisions.

## D. *Section 207 Program*

In 1990, Congress enacted Public Law 101–366, § 207, entitled "Refunds for Certain Service Academy Graduates," not as an amendment to title 38, but as a freestanding statutory provision. The new legislation provided in relevant part:

(a) **In general.**—Upon receipt before January 1, 1992, of an application from an individual described in subsection (b)(3), the Secretary of Veterans Affairs shall—

(1) not later than 60 days after receiving such application, refund to the individual concerned the amount, if any, of the individual's unused contributions to the VEAP Account;

(2)(A) if the individual has received educational assistance under chapter 32 of title 38, United States Code, for the pursuit of a program of education, pay to the individual (out of funds appropriated to the readjustment benefits account) a sum equal to the amount by which the amount of the educational assistance that the individual would have received under chapter 34 of such title for the pursuit of such program exceeds the amount of the educational assistance that the individual did receive under such chapter 32 for the pursuit of such program; or

(B) if the individual has not received educational assistance under such chapter 32, pay to the individual (out of funds appropriated to the Department of Veterans Affairs Readjustment Benefits account) a sum equal to the amount of educational assistance that the individual would have

received under chapter 34 of such title for the pursuit of a program of education if the individual had been entitled to assistance under such program during the period ending on December 31, 1989; and

(3) refund to the Secretary of Defense the unused contributions by such Secretary to the VEAP Account on behalf of such individual.

Pub.L. No. 101–366, Title II, § 207, 104 Stat. 442 (1990), as amended by Pub.L. No. 102–83, § 5(c)(2), 105 Stat. 406 (1991) (currently found at 38 U.S.C. § 3222 note). The VA subsequently promulgated regulations pertaining to section 207 programs including 38 C.F.R. § 21.4703, which states in relevant part:

(a)(2) If the individual has not received educational assistance under chapter 32, title 38, United States Code, the payment amount will equal the amount of educational assistance allowance the individual would have received under chapter 34, title 38, United States Code, for the pursuit of a program (or programs) of education if the individual had been entitled to educational assistance under that program during the period ending on December 31, 1989.

(b) *Determining the amount payable under chapter 34.* In determining the amount payable under paragraphs ... (a)(2) of this section, VA will apply the law and regulations governing chapter 34, title 38, United States Code on the dates of the pursuit of the program (or programs) of education, except as noted in § 21.4704 of this subpart.

38 C.F.R. §§ 21.4703(a)(2), 21.4703(b) (1994). Section 21.4704 of title 38 of the Code of Federal Regulations outlines provisions of title 38 which will not apply to § 207 programs, but the limiting provisions of 38 U.S.C. § 3681(a) were not included in that list.

## III. ANALYSIS

In these cases, it is undisputed by the parties that both of the appellants commenced their third academic year as midshipmen at the United States Naval Academy before January 1, 1977, and that both appellants met the active-duty requirements set forth in § 207. *See* § 207(b)(3); *see also* 38 U.S.C. § 3222 note. It also is undisputed that neither of the appellants elected to participate in the chapter 32 educational assistance program. The determinative question to be decided, therefore, is whether the appellants were entitled to educational benefits pursuant to subsection (a)(2)(B) of § 207.

### A. Contentions of the Parties

In the view of the Secretary, the language in subsection (a)(2)(B) referring to the amount the individual "would have received under [c]hapter 34" should be interpreted as the amount that "would have been obtainable if the individual had first sought chapter 34 benefits." Secretary's Br. at 13. He asserted that Congress' intent in enacting § 207 was to amend Public Law 94–502 (which instituted the chapter 32 program and effectively curtailed eligibility for the preexisting chapter 34 program) and that, in interpreting the "amended statute," the old (amended) and new (amending) provisions must be construed together. *Id.* at 14–15. It was the Secretary's original position that the BVA, in both decisions on appeal, appropriately interpreted the new liberalizing provisions in § 207 in conjunction with the provisions of chapter 34 prior to amendment, i.e., by considering and applying the limitation to chapter 34 eligibility expressed in 38 U.S.C. § 3681(a) through operation of 38 C.F.R. § 21.4025(b), which prohibits chapter 34 payments where an individual already is receiving educational assistance from certain enumerated sources including, inter alia, the Armed Forces. The Secretary contended, and the BVA had noted in each of its decisions, that because the appellants received Navy tuition assistance to pay for part of their coursework, they were at the time of their enrollment, and are now, under the new § 207 provisions, precluded from recovering chapter 34 benefits by operation of 38 U.S.C. § 3681(a) through 38 C.F.R. § 21.4025(b). *Id.* at 15. However, in seeking reconsideration, the Secretary changed his position and now contends that the appellants are precluded from recovering chapter 34 benefits by operation of 38 U.S.C. § 3681(a) as applied to § 207 by 38 C.F.R. §§ 21.4703–.4704,

not by 38 C.F.R. § 21.4025(b), the regulation upon which the BVA and the Secretary originally relied. Reply brief and response to the Order of the Court at 2–3.

The appellants, in turn, consistently contended that the language in subsection (a)(2)(B), "sum equal to the amount of educational assistance that the individual would have received under chapter 34 ... if the individual had been entitled to assistance under such program during the period ending on December 31, 1989" referred to the amount an individual would have received under chapter 34 provided he or she had been eligible for such assistance during the period ending on December 31, 1989. Tallman's Br.; Diffie's Br. at 3. They contended that § 207 was enacted to provide retroactive entitlement to chapter 34 benefits to 1977 and 1978 service academy (and 1978 SROTC) graduates who were treated inequitably as compared to other similarly situated individuals; that § 207 contained no mention of the bars to duplicate benefits contained in 38 U.S.C. § 3681(a) and 38 C.F.R. § 21.4025(b); and that, in any event, those limiting provisions were intended to prevent "double-dipping" or the *concurrent* payment of federal benefits from VA and the United States Armed Forces, a situation not presented by their claims because they were ineligible for chapter 34 benefits at the time of their receipt of Navy tuition assistance, and because they seek only the difference between the amount they have received from the Navy and the amount to which they assert entitlement under chapter 34.

Subsequently, the appellants each reiterated their desire only to recover what would have been paid to them had they been eligible for Chapter 34 benefits at the time of their coursework. Such a result, they argued, is consistent with the Congressional intent of the "make whole" provision of § 207, and does not give rise to the "double dipping" concern argued by the Secretary. Diffie's reply Br.; Tallman's reply Br. at 1–2.

### B. Ambiguity of Statutory Language

▮ As in all matters involving statutory interpretation, our analysis must begin with an examination of the statutory language itself. *See Sweitzer v. Brown,* 5 Vet. App. 503, 504 (1993); *see also United States v. Hohri,* 482 U.S. 64, 69, 107 S.Ct. 2246, 2250, 96 L.Ed.2d 51 (1987); *Kelly v. Robinson,* 479 U.S. 36, 43, 107 S.Ct. 353, 357–58, 93 L.Ed.2d 216 (1986). In analyzing a statute, the Court examines the specific statutory language at issue as well as the overall structure of the statute. *See Smith v. Brown,* 35 F.3d 1516, 1523 (Fed.Cir.1994); *Gardner v. Derwinski,* 1 Vet.App. 584, 586 (1991) *aff'd, sub nom. Gardner v. Brown,* 5 F.3d 1456 (Fed.Cir.1993), *aff'd,* —— U.S. ——, 115 S.Ct. 552, 130 L.Ed.2d 462 (1994) (citing *Bethesda Hosp. Ass'n v. Bowen,* 485 U.S. 399, 403–05, 108 S.Ct. 1255, 1258–59, 99 L.Ed.2d 460 (1988)). "[E]ach part or section of [the statute] should be construed in connection with every other part or section so as to produce a harmonious whole." 2A NORMAN J. SINGER, SUTHERLAND STATUTORY CONSTRUCTION [SUTHERLAND] § 46.05 (5th ed. 1992) (quoted in *Talley v. Derwinski,* 2 Vet.App. 282, 286 (1992)). A clearly drafted statute, perforce, reduces the frequency of disputes regarding interpretation. "Where a statute's language is plain, and its meaning clear, no room exists for statutory construction. There is nothing to construe." *Gardner,* 1 Vet.App. at 587–88 (citing *Lewis v. United States,* 92 U.S. 618, 23 L.Ed. 513 (1876)); *see also* SUTHERLAND § 46.01. Where the plain meaning of a statute is discernible, that "plain meaning must be given effect unless a 'literal application of [the] statute will produce a result demonstrably at odds with the intention of its drafters.'" *Gardner,* 1 Vet.App. at 587 (quoting *Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982)).

"When a word is not defined by statute, we normally construe it in accord with its ordinary or natural meaning." *Smith v. United States,* —— U.S. ——, ——, 113 S.Ct. 2050, 2054, 124 L.Ed.2d 138 (1993) (citing *Perrin v. United States,* 444 U.S. 37, 42, 100 S.Ct. 311, 314, 62 L.Ed.2d 199 (1979)); *see also United States v. Seven Misc. Firearms,* 503 F.Supp. 565, 573 (D.D.C.1980) (common words in a statute should be given their common meaning). Webster's Dictionary gives alternative definitions for the conjunction "if" which are

potentially inconsistent: (1) "on condition that; in case that; supposing that," and (2) "allowing that; granting that." WEBSTER'S NEW WORLD DICTIONARY 670 (3d College ed. 1988). The first definition requires that the condition in fact exist, while the second definition assumes that the condition exists. The Secretary essentially interprets the word "*if*" in the words "pay to the individual ... the amount ... that the individual would have received ... *if* the individual had been entitled to assistance [under chapter 34]" in subsection (a)(2)(B) of § 207 to mean "*on condition that* or *in the event that*" consistent with definition (1) above. *See* Secretary's Br. at 13–16. Based on this reading of the statute, the Secretary argues that the appellants were not entitled to chapter 34 benefits on December 31, 1989, because of their receipt of Navy tuition assistance, and therefore they are not entitled now to payments pursuant to subsection (a)(2)(B) of § 207. The appellants, on the other hand, urge an alternative definition consistent with definition (2) above. They would read the word "*if*" as "*[assuming* or *allowing that]* the individual had been entitled to assistance [under chapter 34]." Accordingly, the appellants argue that they are entitled to the payment of the amount they would have received under chapter 34 assuming or allowing that they had been, in fact and law, eligible for such benefits at the time of their graduate coursework.

 Ambiguity exists "when a statute is capable of being understood by reasonably well-informed persons in two or more different senses." SUTHERLAND § 45.02, at 6. The listed definitions are common meanings of the word "if" and one effectively supports the Secretary's position, while the other supports the appellants' position regarding the meaning of subsection (a)(2)(B) of § 207. Thus, unfortunately, in these cases, neither an examination of the exact language of § 207 and chapters 34 and 32 of title 38, nor an analysis of the common usage or the dictionary definition of the word "if" (as used in the determinative language in subsection (a)(2)(B) of § 207) permits a "plain meaning" interpretation of § 207.

*C. Examination of Legislative History*

 When the language of a statute is ambiguous, as is the case with § 207, the task of interpreting the statute's meaning may require recourse to the legislative history to decipher Congress' intended purpose in enacting the legislation. *See Hohri,* 482 U.S. at 71, 107 S.Ct. at 2251 ("Because the statute is ambiguous, Congressional intent is particularly relevant to our decision."); *see also National Woodwork Mfrs. Ass'n v. National Labor Relations Bd.,* 386 U.S. 612, 619, 87 S.Ct. 1250, 1255, 18 L.Ed.2d 357 (1967); *Maneja v. Waialua Agric. Co., Ltd.,* 349 U.S. 254, 268–70, 75 S.Ct. 719, 727–28, 99 L.Ed. 1040 (1955). Further, in deciding how to interpret or construe an ambiguous statute, courts often have looked to the preenactment history to determine the circumstances under which the enactment was passed and the problem it was intended to remedy. *See, e.g., National Labor Relations Bd. v. Allis–Chalmers Mfg. Co.,* 388 U.S. 175, 179–80, 87 S.Ct. 2001, 2005–07, 18 L.Ed.2d 1123 (1967); *Zemel v. Rusk,* 381 U.S. 1, 7–13, 85 S.Ct. 1271, 1275–79, 14 L.Ed.2d 179 (1965). Here, because the meaning of § 207, and specifically the pertinent language in subsection (a)(2)(B) "*if* the individual had been entitled to assistance under such program during the period ending on December 31, 1989 [emphasis added]," is ambiguous or "capable of being understood by reasonably well-informed persons in two or more different senses," SUTHERLAND § 45.02, at 6, this Court will look to the legislative history in an attempt to elicit Congress' intent in enacting the legislation.

In October 1987, Representative Robert K. Dornan of California introduced legislation in the United States House of Representatives to revise chapter 32 to restore eligibility for chapter 34 educational assistance to all service academy (and SROTC) graduates who had contracted with the armed services when the old GI Bill (chapter 34) was still in effect. In support of the new legislation, he stated:

> The classes of 1977 and 1978 were inadvertently excluded from eligibility even though they had committed to 7 years of active duty prior to the December 31, 1976, deadline.

. . . .

Mr. Speaker, since the intent of Congress was clearly to protect the existing benefits of those presently in, or committed to the armed services, the academy classes of 1977 and 1978 should clearly be included and I ask all our colleagues to help rectify this inequity and cosponsor this necessary and long overdue legislation.

133 Cong.Rec. H3985 (Oct. 4, 1987) (remarks of Rep. Dornan).

In May 1988, Senator Alan Cranston, Chairman of the Senate Committee on Veterans Affairs, introduced S. 2383, a similar bill to amend title 38 to extend eligibility for education benefits under the Vietnam-era GI Bill to certain service academy and SROTC graduates. However, in October 1989, the House of Representatives objected to the requirement in the Senate bill making a service academy (or SROTC) graduate's participation in VEAP [chapter 32 program] a prerequisite for eligibility for chapter 34 benefits; after discussing the purposes behind the proposed "Montgomery GI Bill Amendments," Representative Dornan stated in relevant part:

In short, the classes of 1977 and 1978 deserve the entire package of benefits that were offered at the time they made their commitments to serve their country. The current inequality is highlighted by the fact that others in similar situations, such as 1977 ROTC graduates, delayed entry participants, and academy classmates who attended a service academy prep school are ... eligible for those benefits.

. . . .

Mr. Speaker, since the intent of Congress was clearly to protect the existing benefits of those in, or committed to, the Armed Services, as of December 31, 1976, the academy classes of 1977 and 1978 should clearly be included. . . .

135 Cong.Rec. H6381, H6385 (Oct. 2, 1989) (remarks of Rep. Dornan).

Section 207 ultimately was enacted as part of Public Law 101-366, entitled the "Department of Veterans Affairs Nurse Pay Act of 1990." H.Rep. No. 106, 101st Cong., 2d

Sess., *reprinted in* 1990 U.S.C.C.A.N. 639. According to the Explanatory Statement on the Compromise Agreement for Public Law 101-366, the House-passed bill (Section 4 of H.R. 1358, effective as of January 1, 1977) would have: (a) extended chapter 34 eligibility to 1977 and 1978 service academy graduates and 1978 SROTC graduates who met the chapter 34 180-day and active-duty character-of-service requirements and, before January 1, 1990, had filed an irrevocable election of chapter 34 benefits; (b) made those graduates eligible for refunds of any amounts of their unused contributions to the chapter 32 VEAP account; and (c) made those who had received educational assistance under chapter 32 eligible for payment of an amount equal to the amount by which chapter 34 benefits for the program pursued exceeded the assistance received under chapter 32 for that program. The Explanatory Statement notes that there was no Senate bill relating to § 207, but that section 336 of S. 2011 (100th Congress), as reported and as passed by the Senate in H.R. 4741 on October 18, 1988, was substantially similar to the House provisions, with the additional requirement that in order to be eligible for chapter 34 assistance, the individual must have enrolled in the chapter 32 program while on active duty. According to the Explanatory Statement, the compromise agreement on § 207 followed the House bill with the following modifications: (1) it postponed until January 1, 1992, the deadline for filing an election between chapter 32 and 34, and (2) it provided by way of a freestanding statute-at-large, rather than amendments to title 38, for the same payments as the House-passed legislation. *See* 1990 U.S.C.C.A.N. 666-67.

### D. Interpreting the Meaning of Section 207(a)(2)(B)

#### 1. Legislative History

The legislative history sheds absolutely no light on the ambiguity created by the use of the word "if"; whether the word "if" as used in *"if* the individual had been entitled" in subsection (a)(2)(B) of § 207 means *"on condition that"* or *"assuming that."* Nor is there any indication that Congress gave any

consideration to the potential limiting effect of 38 U.S.C. § 3681(a). The arguments of the Secretary notwithstanding, this Court has uncovered no reference whatsoever in the language of § 207 or the legislative history to the statutory and regulatory bar to duplicate payments contained in 38 U.S.C. § 3681(a) and 38 C.F.R. § 21.4025(b). Further, after careful examination of the legislative history of the newly enacted § 207(a)(2)(B) payment provisions, this Court has not found any intention on the part of the drafters of the legislation to exclude from entitlement to payments those 1977 and 1978 service academy (and 1978 SROTC) graduates who previously had received tuition assistance from the Armed Forces. Thus the Court is left with, on the one hand, ambiguity in the statute over the use of the word "if," and, on the other hand, silence created by a lack of any reference to a limitation upon eligibility like the nonduplication of benefits limitation in 38 U.S.C. § 3681(a).

### 2. Agency Interpretation

In *K Mart Corp. v. Cartier, Inc.*, the Supreme Court stated:

> In determining whether a challenged regulation is valid, a reviewing court must first determine if the regulation is consistent with the language of the statute.... If the statute is silent or ambiguous with respect to the specific issue addressed by the regulation, the question becomes whether the agency regulation is a permissible construction of the statute.... If the agency regulation is not in conflict with the plain language of the statute, a reviewing court must give deference to the agency's interpretation of the statute.

486 U.S. 281, 291–92, 108 S.Ct. 1811, 1817–18, 100 L.Ed.2d 313 (1988); *see also Brooks v. Brown*, 5 Vet.App. 484, 487 (1993).

It was and remains the position of the Secretary that § 207 did not extend chapter 34 benefits to the appellants because they were not entitled to such benefits. Initially the Secretary relied upon 38 C.F.R. § 21.4025(b) as the authority for the conclusion that 38 U.S.C. § 3681(a) applied to § 207 programs. Since the appellants participated in another federal program, the armed forces tuition assistance program, the Secretary argued that § 3681(a) acted as a bar to receipt of § 207 benefits because the appellants failed to meet the "on condition that" requirement of § 207(a)(2)(B).

Although "an administrative agency's interpretation of an applicable statute or regulation, particularly where the statute or regulation is unclear, may be entitled to deference," *Combee v. Principi*, 4 Vet.App. 78, 91 (1993) (citing *Federal Election Comm'n v. Democratic Senatorial Campaign Comm.*, 454 U.S. 27, 31, 102 S.Ct. 38, 42, 70 L.Ed.2d 23 (1981)); *see also Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), the Court originally concluded that such deference was not warranted here, because the agency's legal interpretation of § 207 appeared to have been advanced for the first time in this litigation. *See Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 212, 109 S.Ct. 468, 473–74, 102 L.Ed.2d 493 (1988) (declining to afford deference to "agency litigating positions that are wholly unsupported by regulations, rulings or administrative practice"). Section 207 was enacted in 1990 and amended in 1991; there was nothing before the Court which would indicate that the Secretary's attempted application of 38 U.S.C. § 3681(a) through 38 C.F.R. § 21.4025(b) to the claims of these two appellants was in furtherance of a practice or interpretation of long standing. The Court found no basis for accepting either the reliance of the Secretary (or the Board) upon 38 C.F.R. § 21.4025(b) or the proffered interpretation of § 207.

In his motion for reconsideration, the Secretary abandoned his previous reliance upon 38 C.F.R. § 21.4025(b), bringing to the Court's attention an existing interpretation of § 207 in other regulations which were initially proposed in April 1992 and finally promulgated in December 1992 with a retroactive effective date of August 1990. The Secretary argued that the limiting provisions of § 3681(a) were made applicable to the appellants' claims by 38 C.F.R. § 21.4700–.4705, and that this interpretation was long standing and not one initially advanced in furtherance of this litigation. The Secretary also

argues that the agency's interpretation of § 207 and the nonduplication of benefits limitations existed well before litigation, as evidenced by Veterans Benefits Administration Circular (VBA Circular) 22–90–5, dated June 24, 1991, which directed VA regional offices to make

> adjudicative decisions [pertaining to Section 207 claims] ... consistent with the law and regulations that were in effect at the time the veteran was in training.... No Section 207 benefits [were to be] paid to individuals on active duty who were pursuing a course of education that was being paid for by the Armed Forces.... NOTE: Section 207 payment eligibility does *not* establish basic chapter 34 eligibility....

Reply brief and response to the Order of the Court, Exh. 3 at 9. This circular clearly levies the 38 U.S.C. § 3681(a) limitations upon Section 207 program applicants. Further, in April 1992, these instructions were proposed as regulations which were later published at 38 C.F.R. § 21.4703(b), and which stated, "In determining the amount payable under [Section 207 program], VA will apply the law and regulations governing chapter 34, title 38, United States Code on the dates of the pursuit of the program (or programs) of education, except as noted in § 21.4704 of this subpart." *See* 57 Fed.Reg. 57,101 (1992) (proposed April 21, 1992). The proposed 38 C.F.R. § 21.4704 did not exclude 38 U.S.C. § 3681(a), and thus this chapter 34 limitation was carried over and applied to the Section 207 program. These proposed rules were promulgated on December 3, 1992, with retroactive application to August 15, 1990, to coincide with the statute's application. *Id.*

The Secretary has now provided persuasive authority for the proposition that VA has consistently interpreted Section 207 entitlements to be limited by the 38 U.S.C. § 3681(a) bar to duplication of benefits beginning well before this litigation, for appellant Tallman's BVA decision was entered on November 17, 1992, and appellant Diffie's decision was dated September 25, 1992. The Secretary has also consistently articulated an interpretation that the "if" in Section 207(a)(2)(B) means "on condition that," for

the VBA circular incorporates that interpretation by noting that "Section 207 payment eligibility does not establish chapter 34 eligibility." VBA Circular, *supra.*

■ In *Talley, supra,* this Court stated that "[j]ust as a statute should be construed so as to sustain its constitutionality, ... so should regulations be construed so as to harmonize them with the authorizing law." 2 Vet.App. at 287 (citations omitted). The Secretary has delegated authority to regulate the granting of educational assistance benefits. *See* 38 U.S.C. § 501 ("The Secretary has authority to prescribe all rules and regulations which are necessary ... to carry out the laws administered by the Department and are consistent with those laws"). The Supreme Court has held that a "precondition to deference under *Chevron* is a congressional delegation of administrative authority ... [citations omitted]." *Adams Fruit Co. v. Barrett,* 494 US 638, 649, 110 S.Ct. 1384, 1390, 108 L.Ed.2d 585 (1990) Thus VA had authority to regulate the limitations to be placed upon the Section 207 benefits, as long as the limitations "were consistent with those laws."

■ VA's regulatory interpretation of the appropriate limitations to be placed upon § 207 benefits by 38 U.S.C. § 3681(a) is not in conflict with § 207's silence on this point, and is harmonious with the limitations placed upon the other educational assistance programs administered by the agency. *See* 38 U.S.C. § 3681(a) ("No educational assistance allowance granted under chapter 30, 34, 35, or 36 of this title ... shall be paid to any eligible person (1) who is on active duty and is pursuing a course of education which is being paid for by the Armed Forces ..."); *see also* 38 C.F.R. §§ 21.22 (applies 38 U.S.C. § 3681(a) limitations to chapter 31 education benefits); 21.1025 (applies 38 U.S.C. § 3681(a) limitations to chapter 34 education benefits); 21.3025 (applies 38 U.S.C. § 3681(a) limitations to chapter 35 education benefits); 21.4025 (again applies 38 U.S.C. § 3681(a) limitations to chapters 35 and 34 education benefits); 21.4704 (applies by implication 38 U.S.C. § 3681(a) limitations to the Section 207 program); 21.5023 (applies 38 U.S.C. § 3681(a) limitations to chapter 32

education benefits); 21.7142(c) (applies 38 U.S.C. § 3681(a) limitations to chapter 30 education benefits); 21.7642(d) (applies 38 U.S.C. § 3681(a) limitations to 10 U.S.C. chapter 106 educational benefits for members of selected reserve). Thus, VA's interpretation does not contradict § 207, and the interpretive regulations harmoniously place the § 207 program into VA's education assistance scheme. Given the ambiguity that exists in the statute, and the evidence of a longstanding administrative practice supported by the June 1991 VBA Circular and the duly promulgated regulations in 38 C.F.R. § 21.4700–.4705, the Department's interpretation, manifested well before any litigation on the issue commenced, will be accorded due deference. *See K Mart Corp., supra.*

### E. Application of Interpretation to the Appellants' Claims

■ Since both of the appellants were on active duty and were pursuing a course of education which was being paid for by the Armed Forces, they were precluded from receiving educational assistance under chapter 34 (*see* 38 U.S.C. § 3681(a)); because they were ineligible for chapter 34 benefits, they are not eligible for § 207 benefits (*see* § 207(a)(2)(B)). Section 207 does not independently operate to create chapter 34 eligibility. 38 C.F.R. § 21.4704(b). We are also mindful that remedial statutes should be liberally construed in favor of those whom the legislation was designed to benefit. *See, e.g., Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 397–98, 102 S.Ct. 1127, 1134–35, 71 L.Ed.2d 234 (1982); *Irwin v. Department of Veterans Affairs,* 498 U.S. 89, 102, 111 S.Ct. 453, 461, 112 L.Ed.2d 435 (1990) (Stevens, J., concurring in part and dissenting in part); *Smith,* 35 F.3d at 1525; *Batchelor v. Oak Hill Medical Group,* 870 F.2d 1446, 1449 (9th Cir.1989); *Baker v. U.S. Steel Corp.,* 867 F.2d 1297, 1299 (11th Cir.1989). Indeed, the Court takes specific note of the Supreme Court's injunction that veterans benefits laws should be "construed in the beneficiaries' favor." *King v. St. Vincent's Hosp.,* 502 U.S. 215, 221 n. 9, 112 S.Ct. 570, 574 n. 9, 116 L.Ed.2d 578 (1991). However, in this case the statute is ambiguous as to the intended beneficiaries of the remedial legislation. The agency chartered with the responsibility to interpret the statute has done so consistent with the language of the statute. Under this interpretation, which the Court defers to in this case, the appellants were not the intended beneficiaries of § 207 because of their failure to qualify for the chapter 34 benefits; thus, today's decision in no way negates the beneficial interpretation requirements afforded intended beneficiaries.

■ Further, the appellants have requested a payment which represents the difference between the amounts they received under the tuition assistance program, and the amounts they would have received had they been eligible for the chapter 34 educational assistance program at the time they began their coursework. They cite no statutory authority other than § 207 as a basis for entitlement and authority for such compensation by VA. Unlike in *Bernier v. Brown,* where the Secretary had an affirmative statutory direction to make the effective dates of education programs consistent with the effective dates of compensation determinations "to the extent feasible," here there is no such language in § 207. *See Bernier v. Brown,* 7 Vet.App. 434 (1995). Nor in this case is there a subsequent determination of retroactive service connection of a disability which impacts upon the entitlement to educational assistance. *See ibid.* (applying 38 U.S.C. § 5113(a), which states that "effective dates relating to awards under chapters 30, 31, 32, 34, and 35 of this title or chapter 106 of title 10 shall, to the extent feasible, correspond to effective dates relating to awards of disability compensation."). Section 207 does not present a statutory authorization for the Secretary to award what the appellants seek; the statute provides a specific offset for the difference between chapter 34 and chapter 32 benefits, (*see* Section 207(a)(2)(A)), but it does not contain authorization for an offset for the difference between chapter 34 benefits and those received from another federal program, such as the tuition assistance program used by the appellants. Absent such statutory authority, the Secretary would be precluded from paying the requested benefit

amounts. *See OPM v. Richmond,* 496 U.S. 414, 416, 110 S.Ct. 2465, 2467, 110 L.Ed.2d 387 (1990) ("We hold that payments of money from the Federal Treasury are limited to those authorized by statute....").

## IV. CONCLUSION

When confronted with a similarly ambiguous statute, Justice Blackmun commented as follows:

> [T]he statute the Court is forced to construe in this case is not a model of legislative craftsmanship. Surely, Congress is able to make its intent more evident than in the language it has utilized here. It is hoped that Congress will look at the problem it has created and will set forth in precise terms its conclusion [on the issue presented by the case].

*Hohri,* 482 U.S. at 76, 107 S.Ct. at 2254 (Blackmun, J., concurring).

 In denying the appellants' claims, the BVA erroneously relied upon 38 C.F.R. § 21.4025(b). However, the BVA could have properly relied upon 38 C.F.R. §§ 21.4703–.4704 to reach the same conclusion. In *Securities and Exchange Commission v. Chenery Corp.,* the Supreme Court stated that the "grounds upon which an administrative order must be judged are those upon which the record discloses that its actions was based." 318 U.S. 80, 87, 63 S.Ct. 454, 459, 87 L.Ed. 626 (1943). The correctness of the Board's decisions rested upon its interpretation of § 207 as limited by 38 U.S.C. § 3681(a) which afforded the Board no discretion in concluding that the appellants were not entitled to the educational benefits they sought. Reaching the same conclusion based upon the appropriate regulatory scheme is consistent with the Supreme Court's statement in *Chenery* that the Supreme Court did not "disturb the settled rule that, in reviewing the decision of a lower court, it must be affirmed if the result is correct 'although the lower court relied upon a wrong ground or gave a wrong reason.' (quoting *Helvering v. Gowran,* 302 U.S. 238, 245, 58 S.Ct. 154, 158, 82 L.Ed. 224 (1937))." *Ibid.; see also Ward v. Merit Systems Protection Bd.,* 981 F.2d 521, 528 (Fed.Cir.1992) ("Since here 'it is clear that ... the agency would have reached

the same ultimate result, we do not improperly invade the administrative province by affirming.'") (quoting *Salt River Project Agric. Improvement & Power Dist. v. United States,* 762 F.2d 1053, 1061, n. 8 (D.C.Cir. 1985)).

 Also, to the extent that the BVA's reliance upon 38 C.F.R. § 21.4025(b) was error, such error was harmless because it did not change the outcome of the appellants' claims. *See* 38 U.S.C. § 7261(b); *see also Gabrielson v. Brown,* 7 Vet.App. 36, 41 (1994); *Sanchez v. Derwinski,* 2 Vet.App. 330, 333 (1992). The appellants remain ineligible for § 207 benefits by operation of 38 C.F.R. §§ 21.4703–.4704, which effectively incorporate the 38 U.S.C. § 3681(a) limitations into the § 207 compensation plan.

Accordingly, having considered the record and the filings of the parties, based upon the reasons and analysis provided above, the Court concludes that the appellants each are ineligible to participate in the § 207 program. For the foregoing reasons, the Court AFFIRMS the BVA's November 17, 1992, and September 25, 1992, decisions.