**Daniel H. BROOKS, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

**No. 92–522.**

United States Court of Veterans Appeals.

Oct. 8, 1993.

Daniel H. Brooks, pro se.

Robert E. Coy, Acting Gen. Counsel, Norman G. Cooper, Asst. Gen. Counsel, Thomas A. McLaughlin, Deputy Asst. Gen. Counsel, and John D. Lindsay, Jr., were on the pleadings, for appellee.

Before KRAMER, IVERS and STEINBERG, Judges.

IVERS, Judge:

Daniel H. Brooks appeals a December 30, 1991, decision of the Board of Veterans' Appeals (BVA or Board) denying service connection for heart disease. *Daniel H. Brooks*, BVA 91–41202 (Dec. 30, 1991). The Secretary has filed a motion for summary affirmance. The Court has jurisdiction over the case pursuant to 38 U.S.C.A. § 7252(a) (West 1991). For the reasons set forth below, the Court will affirm the December 1991 BVA decision.

## I. FACTUAL BACKGROUND

Appellant served on active duty in the United States Navy from July 1950 to May 1954. *See* R. at 65. He also was in the Naval Reserves from May 1971 to June 1988. *See* R. at 20; Supplemental R. at 7. On June 25, 1988, he suffered an acute myocardial infarction (heart attack). *See* R. at 36, 68. (A heart attack is defined as "an acute episode of heart disease (as myocardial infarction) due to insufficient blood supply to the heart muscle itself [especially] when caused by a coronary thrombosis or a coronary occlusion." WEBSTER'S MEDICAL DESK DICTIONARY 284 (1986) [hereinafter "WEBSTER'S"].) At the time of the infarction, he was on inactive duty training. R. at 36, 38. On June 19, 1989, he applied to a Department of Veterans Affairs (VA) regional office (RO) for service connection for a heart condition. *See* R. at 65. On March 26, 1990, the RO sent appellant notification of its denial of service connection. R. at 62. On December 30, 1991, the BVA also denied service connection for a heart condition because appellant's claim was not well grounded. *Brooks*, BVA 91–41202, at 4, 6.

## II. ANALYSIS

### A. *Laws Governing Direct Service Connection for Inactive Duty Training*

As an initial matter, "a person who submits a claim for benefits under a law ad-

ministered by the Secretary shall have the burden of submitting evidence sufficient to justify a belief by a fair and impartial individual that the claim is well grounded." 38 U.S.C.A. § 5107(a) (West 1991). "A well grounded claim is a plausible claim, one which is meritorious on its own or capable of substantiation." *Murphy v. Derwinski,* 1 Vet.App. 78, 81 (1990). "The test is an objective one which explores the likelihood of prevailing on the claim under the applicable standards." *Tirpak v. Derwinski,* 2 Vet.App. 609, 611 (1992). In this case, appellant is seeking direct service connection of a heart condition, with specific reference to his June 1988 myocardial infarction. R. at 61. In order to determine whether appellant's claim is well grounded, we must examine as a matter of law the applicable laws and regulations governing direct service connection in peacetime.

The applicable statute governing direct service connection in peacetime is found at 38 U.S.C.A. § 1131 (West 1991). Section 1131 provides:

> For disability resulting from personal injury suffered or disease contracted in line of duty, or for aggravation of a preexisting injury suffered or disease contracted in line of duty, *in the active military, naval, or air service,* during other than a period of war, the United States will pay to any veteran thus disabled and who was discharged or released under conditions other than dishonorable from the period of service in which such injury or disease was incurred, or preexisting injury or disease was aggravated, compensation as provided in this subchapter, but no compensation shall be paid if the disability is a result of the veteran's own willful misconduct or abuse of alcohol or drugs. (Emphasis added.)

The phrase "in the active military, naval, or air service" is further defined by 38 U.S.C.A. § 101(24) (West 1991):

> The term "active military, naval, or air service" includes active duty, any period of active duty for training during which the individual concerned was disabled or died from a disease or injury incurred or

aggravated in line of duty, and any period of *inactive duty training* during which the individual concerned was disabled or died *from an injury* incurred or aggravated in line of duty. (Emphasis added.)

*See generally Biggins v. Derwinski,* 1 Vet. App. 474, 477–78 (1991) (discussing provisions of section 101(24)). The implementing regulation maintains the same distinction between disease and injury for purposes of determining active service. 38 C.F.R. § 3.6(a), (d) (1992) (defining duty periods).

■ The Court holds, as a matter of law, that the statutory provisions in question are clear. "Where a statute's language is plain, and its meaning clear, no room exists for construction. There is nothing to construe." *Gardner v. Derwinski,* 1 Vet.App. 584, 587–88 (1991) (citing *Lewis v. United States,* 92 U.S. 618, 23 L.Ed. 513 (1876)), *aff'd sub nom. Gardner v. Brown,* 5 F.3d 1456 (Fed.Cir.1993); *see also* 2A NORMAN J. SINGER, SUTHERLAND STATUTORY CONSTRUCTION § 46.01 (Sands 4th ed.) (discussing plain meaning rule of statutory interpretation). Section 101(24) clearly distinguishes between disease and injury. Thus, in conjunction with this section, section 1131 of title 38 permits service connection for persons on inactive duty only for *injuries,* not *diseases,* incurred or aggravated in line of duty.

Moreover, the legislative history of section 101(24) does not indicate that the provision in question should be otherwise construed. *See* Veterans' Benefits Act of 1958, Pub.L. No. 85–857, 72 Stat. 1105 (consolidating all laws administered by the VA and referring only to prior laws that had conferred benefits upon reservists and members of the National Guard); *see also* H.R.REP. No. 1298, 85th Cong., 2d Sess. 17, 40 (1958), *reprinted in* 1958 U.S.C.C.A.N. 4352, 4353–54, 4362 (referring to prior law that reservists on short-term training (i.e., less than 30 days) qualified for disability/death benefits only for injuries, not diseases); 2A SUTHERLAND STATUTORY CONSTRUCTION § 48.03 (indicating that legislative history, including prior laws on the

subject, is a valuable guide in determining the purpose of an act); *cf.* 5 U.S.C.A. §§ 8102(a), 8101(5) (West 1991) (Federal Employees' Compensation Act compensates federal workers suffering disability "resulting from personal injury sustained while in the performance of [their duties]"; definition therein of "injury" specifically includes "a disease proximately caused by the employment"). The Court of Appeals for the Federal Circuit stated recently:

> Although "[r]ecourse to the legislative history ... is unnecessary in light of the plain meaning of the statutory text," *Darby v. Cisneros,* — U.S. —, —, 113 S.Ct. 2539, 2545, 125 L.Ed.2d 113 (1993), we may look to the legislative history " 'to determine whether there is a *clearly expressed* legislative intention contrary to the statutory language,' " *Glaxo Operations UK Ltd. v. Quigg,* 894 F.2d 392, 395 (Fed.Cir.1990) (quoting *Madison Galleries, Ltd. v. United States,* 870 F.2d 627, 629 (Fed.Cir.1989). We emphasize that because the statutory language is clear, "we do not analyze th[e] history from a neutral viewpoint." *Id.* at 396. The Secretary must make an extraordinarily strong showing of clear legislative intent in order to convince us that Congress meant other than what it ultimately said. *See id.*

*Gardner v. Brown,* 5 F.3d 1456, 1459–60, (Fed.Cir.1993), *aff'g sub nom. Gardner v. Derwinski,* 1 Vet.App. 584 (1991). Similarly,here, in light of the clarity of the statutory text, we reemphasize that our analysis of the legislative history is neither the starting point nor the dispositive factor in our analysis. The legislative history serves only to confirm the Court's de novo analysis; it surely does not contain "an extraordinarily strong showing of clear legislative intent ... that Congress meant other than what it ultimately said." *Ibid.; see also Cole v. Derwinski,* 2 Vet.App. 400, 402 (1992) ("strong presumption that plain language of a statute expresses congressional intent is rebutted only in rare and exceptional circumstances") (following *Demarest v. Manspeaker,* 498 U.S. 184, 190, 111 S.Ct. 599, 603, 112 L.Ed.2d 608 (1991), and *Ardestani v. I.N.S.,* — U.S. —, — — —,

112 S.Ct. 515, 519–20, 116 L.Ed.2d 496 (1991)).

## B. *The BVA's Interpretation of "Injury"*

As discussed above, a person seeking service-connected benefits must fit within one of the categories of active service defined under 38 U.S.C.A. § 101(24). In this case, appellant is seeking benefits for a myocardial infarction incurred during a period of inactive duty training. Therefore, the question is whether appellant's myocardial infarction is "an injury" within the meaning of the statute.

The BVA explicitly rested its decision on a VA General Counsel precedent opinion concerning the eligibility for service connection of a heart attack suffered during inactive duty training. *O.G.C.Prec.* 86–90 (July 18, 1990). Under 38 U.S.C.A. § 7104(c) (West 1991), VA General Counsel precedent opinions are binding on the BVA. *See also* 38 C.F.R. §§ 2.6(e)(9) (VA General Counsel is authorized to designate which of his legal opinions shall be considered precedent opinions involving VA benefits), 14.-507 (VA General Counsel's written legal opinions regarding VA benefits are conclusive as to all VA officials and employees), 19.5 (VA General Counsel's precedent opinions are binding on BVA) (1992). The precedent opinion concluded that "a myocardial infarction, sustained during the course of mandatory heavy exertion during inactive duty training, [does not] constitute 'an injury' within the meaning of 38 U.S.C.[A.] § 101(24) so as to establish incurrence of a disability during such duty, or aggravation by injury of a preexisting disorder." *O.G.C.Prec.* 86–90 at 11.

One of the cardinal principles of statutory interpretation is that the words in a statute "should be given their common and approved usage." 2A SUTHERLAND § 46.01. The VA's interpretation that a myocardial infarction is a disease, not an injury, is supported by other courts that have had an opportunity to explore whether a myocardial infarction is an "injury" or a "disease." Interpreting the disease/injury distinction, the United States Court of

Claims (now the Court of Federal Claims) stated: "In common parlance, a heart attack is not spoken of as an injury but as a disease. If Congress, which obviously did intend to make some distinction, did not intend to make the distinction which is made in common speech, we are at a loss to imagine where they did intend to draw the line." *Gwin v. United States*, 133 Ct.Cl. 749, 137 F.Supp. 737, 740 (1956); *see also* WEBSTER'S at 284; *cf. Stephens v. United States*, 174 Ct.Cl. 365, 358 F.2d 951, 956 (1966) ("[T]he determination that the myocardial infarction sustained by plaintiff … was a manifestation of a pre-existing arteriosclerotic heart disease rather than an 'injury' has not been shown to be arbitrary, capricious, or unsupported by substantial evidence."). The Court now holds that a myocardial infarction is not an injury for purposes of 38 U.S.C.A. §§ 101(24), 1131.

The VA's precedent opinion that a myocardial infarction is not an injury for purposes of service connection for inactive duty training reservists is not "inconsistent with the statutory mandate" and does not "frustrate the policy that Congress sought to implement." *Federal Election Commission v. Democratic Senatorial Campaign Comm.*, 454 U.S. 27, 31–32, 102 S.Ct. 38, 41–42, 70 L.Ed.2d 23 (1981); *see also Combee v. Principi*, 4 Vet.App. 78, 91 (1993); *Gardner*, 1 Vet.App. at 588; *cf. K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 292, 108 S.Ct. 1811, 1818, 100 L.Ed.2d 313 (1988) ("If the agency regulation is not in conflict with the plain language of the statute, a reviewing court must give deference to the agency's interpretation of the statute.") (citing *United States v. Boyle*, 469 U.S. 241, 246 n. 4, 105 S.Ct. 687, 690 n. 4, 83 L.Ed.2d 622 (1985)); *Travelstead v. Derwinski*, 978 F.2d 1244, 1250 (Fed.Cir.1992) ("agency pronouncements that are merely interpretive are given lesser deference, varying with such factors as the timing and consistency of the agency's position and the nature of its expertise") (citing *General Electric Co. v. Gilbert*, 429 U.S. 125, 141–45, 97 S.Ct. 401, 410–13, 50 L.Ed.2d 343 (1976)). *But see Gardner*, 5 F.3d 1456, 1463, (Court of Appeals for the Federal Circuit did not defer to long-standing agency interpretation of statute where Congress had "spoken clearly" on issue in question). The Court holds that the BVA's determination that a myocardial infarction was not an injury for purposes of direct service connection for inactive duty training reservists gives "effect to the unambiguously expressed intent of Congress." *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984); *see Board of Governors, FRS v. Dimension Financial Corp.*, 474 U.S. 361, 368, 106 S.Ct. 681, 685, 88 L.Ed.2d 691 (1986); *K Mart Corp.*, 486 U.S. at 291, 108 S.Ct. at 1817.

### C. *Appellant's Claim*

In this case, appellant suffered a myocardial infarction on June 25, 1988. R. at 23, 27, 36. At that time, he was on inactive duty training. R. at 36. Following the heart attack, appellant was diagnosed with atherosclerotic vascular disease with total occlusion of the right coronary artery. R. at 22–23. Relying on the VA General Counsel precedent opinion, the BVA found that appellant's myocardial infarction did not warrant service connection, and the Court now upholds the BVA's denial of service connection. As the Court held above, a veteran may not seek direct service connection for a myocardial infarction suffered while on inactive duty training because it is not an injury for purposes of service connection for reservists on inactive duty training. Therefore, appellant's claim for service connection did not have a "likelihood of prevailing" and was, therefore, not well grounded. *Tirpak*, 2 Vet.App. at 611. The Court holds that the Board provided adequate reasons or bases for its decision. *See* 38 U.S.C.A. § 7104(d)(1); *Murphy*, 1 Vet.App. at 81 (Board must provide reasons or bases where it determines claim is not well grounded); *Gilbert v. Derwinski*, 1 Vet.App. 49, 53, 57 (1990). *But see* 38 U.S.C.A. § 7261(a)(4) (West 1991); *Combee*, 4 Vet.App. at 95 (having conducted de novo review of question of law involving certain statutory and regulatory provisions, Court then evaluated BVA's findings of fact under "clearly erroneous" standard).

■ The Court notes that appellant's claim for a heart condition actually refers to his June 1988 myocardial infarction. Appellant now appears to argue that a reference to a slight systolic murmur on an April 19, 1975, physical examination prepared for the purpose of active duty for training (R. at 9) could have been an initial manifestation of ischemic heart disease. Appellant's Br. at 3. On a March 30, 1990, Statement in Support of Claim, he wrote: "I request a physical examination ... for an evaluation of my heart condition which I believe to be a service-connected condition. *Prior to the onset of this condition on [June 25, 1988,] (while I was on inactive Reserve duty)* I was physically highly active and mentally alert." R. at 61 (emphasis added). Therefore, when appellant initiated his claim for service connection for a heart condition, he appears to have been referring only to the condition of June 25, 1988, i.e., the myocardial infarction. Consequently, neither the RO nor the Board was presented with the issue of appellant's eligibility for service connection for a heart condition other than the myocardial infarction as adjudicated by the RO and the Board. "Review in the Court shall be on the record of proceedings before the Secretary and the Board." 38 U.S.C.A. § 7252(b) (West 1991). In this case, the veteran has not submitted the issue of service connection for a heart condition to the BVA. Thus, he has not exhausted his administrative remedies, and the Court will not preempt the BVA and address the merits of this claim. *See Horowitz v. Brown*, 5 Vet.App. 217, 225 (1993); *Herzog v. Derwinski*, 2 Vet.App. 502, 503 (1992); *Branham v. Derwinski*, 1 Vet.App. 93, 94 (1990); *Mokal v. Derwinski*, 1 Vet.App. 12, 15 (1990).

The Court further notes that appellant has attached a copy of an August 8, 1989, letter from Dr. Albert Randall. This letter is not properly before this Court. *See* 38 U.S.C.A. § 7252(b); *Rogozinski v. Derwinski*, 1 Vet.App. 19, 20 (1990) (Court's review is limited to the record of proceedings before the Secretary and the Board).

## III. CONCLUSION

Accordingly, upon consideration of the record, the Secretary's motion for summary affirmance, and appellant's brief, the Court AFFIRMS the December 1991 decision of the BVA.