Citation Nr: 1438785 
Decision Date: 08/29/14 Archive Date: 09/03/14

DOCKET NO. 09-13 573 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Atlanta, Georgia


THE ISSUES

1. Entitlement to service connection for a low back disorder. 

2. Entitlement to service connection for a cardiovascular disorder, to include mitral valve prolapse.


REPRESENTATION

Appellant represented by: Georgia Department of Veterans Services


WITNESS AT HEARING ON APPEAL

Appellant

ATTORNEY FOR THE BOARD

S. J. Janec, Counsel

INTRODUCTION

The Veteran served on active duty in the United States Navy from September 1972 to October 1974. He thereafter served on various periods of active duty for training (ACDUTRA) and inactive duty for training (INACDUTRA) in the United States Navy Reserve. He retired in June 1995.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a December 2006 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Atlanta, Georgia that denied service connection for mitral valve prolapse and lumbar strain. The Veteran appealed these determinations. 

In September 2012, the Veteran testified at a hearing conducted before the undersigned Veterans Law Judge at the RO. In April 2013, the Board remanded the case for further evidentiary development. The case has been returned to the Board. The Board finds that the requested development has been substantially accomplished. As such, the Board concludes that further remand is not necessary. Stegall v. West, 11 Vet. App. 268 (1998). D'Aries v. Peake, 22 Vet. App. 97 (2008) (only substantial, and not strict, compliance with the terms of a Board remand is required). 


FINDINGS OF FACT

1. A chronic lumbar spine disability is not shown in service, and the most probative evidence fails to shows that a diagnosed lumbar spine disorder, to include arthritis or degenerative disc disease, had its onset in service, was manifest within one year of discharge, or is otherwise related to the Veteran's period of active duty, including an in-service injury. 

2. The preponderance of the evidence is against a finding that the Veteran's current mitral valve disability is related to his military service.

CONCLUSIONS OF LAW

1. A lumbar spine disability was not incurred in or aggravated by active service, and neither arthritis nor degenerative disc disease may be presumed to have been so incurred. 38 U.S.C.A. §§ 101, 1110, 1131, 5103, 5103A, 5107 (West 2002 & Supp. 2013); 38 C.F.R. §§ 3.6, 3.159, 3.303, 3.307, 3.309(a) (2013). 

2. Mitral valve prolapse, or other cardiovascular disability, was not incurred in or aggravated by active service, and may not be presumed to have been so incurred. 38 U.S.C.A. §§ 101, 1110, 1131, 5103, 5103A, 5107 (West 2002 & Supp. 2013); 38 C.F.R. §§ 3.6, 3.159, 3.303, 3.307, 3.309(a) (2013). 


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Duties to Notify and Assist

The Veterans Claims Assistance Act (VCAA) describes VA's duty to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2002 & Supp. 2013); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2013). Upon receipt of a complete or substantially complete application for benefits, VA is required to notify the claimant and his representative of any information, and any medical or lay evidence, that is necessary to substantiate the claim. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b); Quartuccio v. Principi, 16 Vet. App. 183 (2002). The VCAA notice must inform the claimant of any information and evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide. VCAA notice should be provided to a claimant before the initial unfavorable agency of original jurisdiction (AOJ) decision on a claim. Pelegrini v. Principi, 18 Vet. App. 112 (2004). 

Here, an August 2006 notice letter informed the Veteran of what the evidence must show to establish entitlement to the benefit (e.g., service connection), what evidence and/or information was already in the RO's possession, what additional evidence and/or information was needed from him, what evidence VA was responsible for getting, and what information VA would assist in obtaining on his behalf. The correspondence also detailed how disability ratings and effective dates are assigned. Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006). Neither the Veteran, nor his representative, has alleged error in VA's notice to the Veteran in this appeal. Hence, the duty to notify has been satisfactorily met. 

Regarding the duty to assist, VA obtained the Veteran's service treatment records, service personnel records (including ACDUTRA and INACDUTRA dates) and post-service private and VA medical records, Social Security Administration (SSA) records, and also secured medical opinions in furtherance of the Veteran's claims. The Veteran indicated that he sought treatment at VA facilities beginning in the early 2000's. Upon remand however, VA medical records from that time period were not found. All available records have been associated with the file. The opinions obtained are sufficient because they were based on a thorough examination, consideration of the Veteran's contentions, and a review of the claims file and service treatment records, and included rationales. Barr v. Nicholson, 21 Vet. App. 303, 312 (2007); 38 C.F.R. § 3.159(c)(4) (2013). The Veteran has not identified any additional pertinent medical records, which have not been obtained and associated with the claims folder. VA has no duty to inform or assist with respect to the procurement of relevant records that was unmet. 38 C.F.R. § 3.159(c)(1)-(3) (2013). He was accorded an appropriate VA examination in June 2014. Thus, the Board finds that VA's duty to assist has also been met. 

II. Analysis

Service connection may be established for a disability resulting from personal injury suffered or disease contracted in the line of duty in active service or for aggravation of a preexisting injury suffered or disease contracted in the line of duty in active service. 38 U.S.C.A. §§ 1110, 1131 (West 2002); 38 C.F.R. § 3.303 (2013). Active military service includes: (1) active duty; (2) any period of active duty for training (ACDUTRA) during which the individual concerned was disabled or died from a disease or injury incurred or aggravated in the line of duty; and (3) any period of inactive duty training (INACDUTRA) during which the individual concerned was disabled or died from an injury incurred or aggravated in the line of duty or from an acute myocardial infarction, a cardiac arrest, or a cerebrovascular accident which occurred during such training. 38 C.F.R. § 3.6(a) (2013). Service connection is available for injuries and diseases incurred during active duty or ACDUTRA but (except for exceptions listed) only for injuries, and not diseases, sustained on INACDUTRA. Brooks v. Brown, 5 Vet. App. 484 (1994). If a claim relates to period of active duty for training, a disease or injury resulting in disability must have manifested itself during that period. Paulson v. Brown, 7 Vet. App. 466 (1995). 

ACDUTRA includes full-time duty performed for training purposes by members of the Reserves. 38 C.F.R. § 3.6(c) (2013). INACDUTRA is generally duty (other than full-time duty) prescribed for Reserves or duty performed by a member of the National Guard of any State (other than full-time duty). 38 U.S.C.A. § 101(23) (West 2002); 38 C.F.R. § 3.6(d) (2013). Annual training is an example of active duty for training, while weekend drills are inactive duty training. 

Evidence of continuity of symptomatology of a disability from the time of service to the present is required where the chronicity of a condition manifested during service either has not been established or might reasonably be questioned. 38 C.F.R. § 3.303(b) (2013); Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013). Service connection may also be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes the disease was incurred in service. 38 C.F.R. § 3.303(d) (2013). 

Certain evidentiary presumptions, such as the presumption of sound condition at entrance to service, the presumption of aggravation during service of preexisting diseases or injuries which undergo an increase in severity during service, and the presumption of service incurrence for certain diseases that manifest themselves to a degree of disability of 10 percent or more within a specified time after separation from service (including arthritis or heart disease), are provided by law to assist veterans in establishing service connection for a disability or disabilities. 38 U.S.C.A. § 1112 (West 2002); 38 C.F.R. §§ 3.304 , 3.306, 3.307, 3.309 (2013). The advantages of those evidentiary presumptions do not extend to those whose service connection claim is based on a period of ACDUTRA or INACDUTRA. Smith v. Shinseki, 24 Vet. App. 40 (2010); Paulson v. Brown, 7 Vet. App. 466 (1995) (Board did not err in not applying presumptions of sound condition and aggravation to appellant's claim where he served only on ACDUTRA and had not established any service-connected disabilities from that period); Acciola v. Peake, 22 Vet. App. 320, 324 (2008).

Service connection generally requires evidence of a current disability with a relationship or connection to an injury or disease or some other manifestation of the disability during service. Boyer v. West, 210 F.3d 1351 (Fed. Cir. 2000); Mercado-Martinez v. West, 11 Vet. App. 415 (1998); Cuevas v. Principi, 3 Vet. App. 542 (1992). Lay evidence can be competent and sufficient to establish a diagnosis of a condition when (1) a layperson is competent to identify the medical condition, (2) the layperson is reporting a contemporaneous medical diagnosis, or (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional. Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007). 

In adjudicating a claim, the Board must assess the competence and credibility of the claimant. See Buchanan v. Nicholson, 451 F.3d 1331 (Fed. Cir. 2006); Washington v. Nicholson, 19 Vet. App. 362, 368-69 (2005). The Board also has a duty to assess the credibility and weight given to evidence. Madden v. Gober, 125 F.3d 1477, 1481 (Fed. Cir. 1997); Wensch v. Principi, 15 Vet. App. 362, 367 (2001). Additionally, competency of evidence must be distinguished from weight and credibility, which are factual determinations going to the probative value of the evidence. Rucker v. Brown, 10 Vet. App. 67, 74 (1997); see also Cartwright v. Derwinski, 2 Vet. App. 24, 25 (1991) ("although interest may affect the credibility of testimony, it does not affect competency to testify"). 

The probative value of a physician's statement is dependent, in part, upon the extent to which it reflects "clinical data or other rationale to support his opinion." Bloom v. West, 12 Vet. App. 185, 187 (1999). If all the evidence is in relative equipoise, the benefit of the doubt should be resolved in the claimant's favor, and the claim should be granted. 38 U.S.C.A. § 5107 (West 2002); 38 C.F.R. § 3.102 (2013). However, if the preponderance of the evidence is against the claim, the claim must be denied. Gilbert v. Derwinski, 1 Vet. App. 49 (1990). 

Low Back

Service treatment records reflect an August 1973 diagnosis of blunt trauma to the back following the Veteran's complaint of low back pain due to falling down a ladder. They also reflect his repeated subsequent complaints to include back pain with some radiation, for which diagnoses of muscle trauma, lumbosacral strain, low back strain, and eventually functional complaints as well as psychophysiologic or conversion pains were made. An X-ray in January 1974 was negative. Clinical evaluation at that time revealed full flexion of the spine, full lateral bending, no flank tenderness, and no nodules or masses. Neurologic examination was within normal limits and straight leg raising was normal bilaterally. The final assessment was acute lumbosacral strain. In March 1974, physical examination of the spine was within normal limits. The impression was functional back pain. In his Report of Medical History, completed in June 1975, the Veteran reported recurrent back pain. He noted that he had fallen from a ladder while on active duty and sustained a "back strain." He noted that he still had "occasional discomfort." Clinical evaluation in October 1974 and June 1975 showed that the spine was clinically normal. A chronic lumbosacral spine disability was not identified. 

In a Report of Medical History, completed in January 1977, the Veteran denied recurrent back pain. Clinical evaluation of the spine was within normal limits. In a Report of Medical History, completed in October 1979, the Veteran reported recurrent back pain. Clinical evaluation of the spine was within normal limits. In a Report of Medical History, completed in October 1982, the Veteran denied recurrent back pain. Clinical evaluation of the spine was within normal limits. In a Report of Medical History, completed in October 1984, the Veteran denied recurrent back pain. Clinical evaluation of the spine was within normal limits. In a Report of Medical History, completed in February 1986, the Veteran denied recurrent back pain. Clinical evaluation of the spine was within normal limits. In a Report of Medical History, completed in November 1986, the Veteran denied recurrent back pain. Clinical evaluation of the spine was within normal limits. In a Report of Medical History, completed in May 1988, the Veteran denied recurrent back pain. Clinical evaluation of the spine was within normal limits. In a Report of Medical History, completed in November 1988, the Veteran denied recurrent back pain. Clinical evaluation of the spine was within normal limits. In a Report of Medical History, completed in October 1989, the Veteran denied recurrent back pain. Clinical evaluation of the spine was within normal limits. In a Report of Medical History, completed in November 1991, the Veteran denied recurrent back pain. Clinical evaluation of the spine was within normal limits. In a Report of Medical History, completed in September 1993, the Veteran denied recurrent back pain. Clinical evaluation of the spine was within normal limits. In numerous signed statements during his reserve years, the Veteran denied that his physical condition had changed since his most recent examination, and he denied suffering any injuries or diseases that required hospitalization or loss of work for more than three consecutive days. 

Social Security Administration records indicate that the Veteran has been found to be disabled due to multiple dislocations (including of the wrist) and back disabilities. The Veteran provided a history of having back pain "for a long time." 

A VA medical record dated in December 1999 shows that the Veteran was seen for complaints of back pain. He reported a 20-year history of back pain. He worked as an A/C maintenance person for a college. 

A private medical record dated in November 2004 indicated that the Veteran was seen for an annual health screen checkup. He indicated that he has been relatively healthy but he had "some problems with low back pain in the past." No back disability was identified. 

A private medical record dated in February 2006 indicated that the Veteran was seen after he was involved in a motor vehicle accident. He was hit from behind but was wearing his seatbelt. The assessment was status post motor vehicle accident with resultant cervical and lumbar pain and spasm. 

A September 2008 VA medical record indicated that an MRI of the Veteran's lumbar spine showed disc herniation at three different levels with some narrowing of the nerve outlet canals but no significant nerve compression. X-rays revealed osteoarthritis of the lumbar spine and degenerative disc problems. Follow up records indicate that he received physical therapy for his spine. 

A February 2014 VA MRI report noted multilevel disc desiccation with severe degenerative changes at L4/5. 

At a June 2014 VA examination, the Veteran gave a history of falling down a ladder in service and having back pain. He stated that the pain has continued to the present time. Clinical evaluation revealed degenerative arthritis of the lumbosacral spine with mild radiculopathy, bilaterally, but no intervertebral disc disease. After reviewing the file, including the service treatment records, the examiner concluded that it was less likely that the Veteran's current back disability was incurred in or related to his military service. The clinician noted the Veteran's history of back pain in 1973 and 1974, but indicated that there were no clinical findings of spinal disease upon separation. Additionally, the Veteran was seen on a regular basis during his reserve duty years with no complaints of back pain until 1999. The first radiographic evidence of degenerative arthritis in the spine was in 2008. 

Accordingly, the Board finds that the preponderance of the evidence is against the claim for service connection for a low back disorder because the most probative evidence of record, the June 2014 VA examination report, concluded that the currently manifest arthritis of the Veteran's lumbar spine was not related to his military service, including the in-service incidents of lumbosacral strain. Winsett v. West, 11 Vet. App. 420 (1998). That opinion was based on a full review of the record, the Veteran's statements, his reports of continuity of symptomatology, and a thorough clinical evaluation. Bloom v. West, 12 Vet. App. 185 (1999). There is no medical opinion of record that contradicts the negative findings made in the June 2014 VA report. Further, as arthritis of the lumbar spine was not diagnosed until many years after service, a presumption of service connection is not warranted. Although treated for lumbar strain in service, the Veteran was not diagnosed with a chronic lumbar spine disability upon separation. He continually reported no back pain during his reserve examinations, and there is no indication that he was on active duty at the time he was seen for complaints of back pain in 1999. In this regard, the Board observes that a prolonged period without documented medical complaint can be considered, along with other factors concerning a claimant's health and medical treatment during and after military service, as evidence of whether an injury or disease was incurred in service, which resulted in any chronic or persistent disability. See Maxson v. Gober, 230 F.3d 1330 (Fed. Cir. 2000). 

The Board has considered the lay statements presented. To the extent that the Veteran and others have alleged continuity of symptomatology since discharge, or a relationship between the current disability and service or a service injury, the Board finds that they are competent to report about symptoms or witnessing symptoms after his discharge. Charles v. Principi, 16 Vet. App. 370 (2002); Layno v. Brown, 6 Vet. App. 465 (1994) (veteran is competent to report symptoms because that requires only personal knowledge, not medical expertise, as it comes to him through his senses). However, although lay persons are competent to provide opinions on some medical issues, the specific disability in this case, arthritis, falls outside the realm of common knowledge of a lay person as it requires specialized testing for diagnosis. Kahana v. Shinseki, 24 Vet. App. 428 (2011); Jandreau, supra. (lay persons not competent to diagnose cancer). Therefore, the Board finds that the Veteran's statements cannot be accepted as competent evidence sufficient to establish service connection. 

Moreover, the Board finds that the objective contemporary clinical evidence pertaining to the Veteran's spine is more probative than his later unsupported statements made in conjunction with a claim for VA compensation benefits. See Cartwright v. Derwinski, 2 Vet. App. 24, 25 (1991) ("although interest may affect the credibility of testimony, it does not affect competency to testify"). Accordingly, the Board finds that no probative weight can be assigned to the statements regarding experiencing lumbar spine symptoms since service. 

In the absence of any persuasive and probative evidence that the Veteran's current lumbar spine disorder is etiologically related to active service, service connection is not warranted, and the claim must be denied. As the preponderance of the evidence is against the claim, the benefit of the doubt rule is inapplicable. 38 U.S.C.A. § 5107(b) (West 2002); 38 C.F.R. § 3.102 (2013). 

Mitral Valve Prolapse

The preponderance of the evidence is against a finding that the Veteran currently has a mitral valve disability related to his military service. The Veteran's service treatment records are completely silent as to any diagnosis of a heart disability, including mitral valve prolapse. A June 1990 EKG was interpreted as normal after further evaluation. There was a normal sinus rhythm. An echocardiogram in October 1999 showed evidence of a redundant and floppy mitral valve associated with mild to moderate mitral regurgitation. The Veteran was no on active duty status as he had retired in 1995. A November 2004 private medical record indicated the presence of mitral valve prolapse. An October 2005 private medical record also indicated the presence of mitral valve prolapse. Upon VA examination in June 2014, the Veteran was diagnosed with mitral valve prolapse, but no other cardiovascular disability. After reviewing the full record, the examiner concluded that it was less likely that the mitral valve prolapse was caused or aggravated by his military service. He observed that the murmur was initially found in the 2000s. The prior medical records do not show a diagnosis of a murmur or valvular disease, and there was no earlier evidence of abnormal imaging, auscultory findings or cardiac symptoms that could be due to mitral valve prolapse. There is no contrary competent, medical opinion in the file. 

The Board has considered the lay statements presented. To the extent that the Veteran and others have alleged continuity of symptomatology since discharge, or a relationship between the current disability and service, the Board finds that they are competent to report about symptoms or witnessing symptoms after his discharge. Charles v. Principi, 16 Vet. App. 370 (2002); Layno v. Brown, 6 Vet. App. 465 (1994) (veteran is competent to report symptoms because that requires only personal knowledge, not medical expertise, as it comes to him through his senses). However, although lay persons are competent to provide opinions on some medical issues, the specific disability in this case, mitral valve prolapse, falls outside the realm of common knowledge of a lay person as it requires specialized testing for diagnosis. Kahana v. Shinseki, 24 Vet. App. 428 (2011); Jandreau, supra. (lay persons not competent to diagnose cancer). Therefore, the Board finds that the Veteran's statements cannot be accepted as competent evidence sufficient to establish service connection. 

In the absence of any persuasive and probative evidence that the Veteran's current mitral valve prolapse is etiologically related to active service, service connection for this disorder is not warranted, and the claim must be denied. As the preponderance of the evidence is against this claim, the benefit of the doubt rule is inapplicable. 38 U.S.C.A. § 5107(b) (West 2002); 38 C.F.R. § 3.102 (2013). 


ORDER

Service connection for a low back disorder is denied. 

Service connection for a cardiovascular disorder, to include mitral valve prolapse, is denied. 



____________________________________________
THERESA M. CATINO
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs