Citation Nr: 1703140 
Decision Date: 02/02/17 Archive Date: 02/15/17

DOCKET NO. 12-34 529 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Pittsburgh, Pennsylvania


THE ISSUES

1. Entitlement to service connection for residuals of a traumatic brain injury (TBI).

2. Entitlement to an effective date prior to March 8, 2016 for the grant of a 70 percent rating for posttraumatic stress disorder (PTSD).
 
3. Entitlement to an effective date prior to March 8, 2016 for the grant of a total disability rating based on individual unemployability (TDIU).

4. Entitlement to an effective date prior to March 8, 2016 for the grant of basic eligibility to Dependents' Educational Assistance.


REPRESENTATION

Appellant represented by: Yelena C. Duterte, Attorney 





ATTORNEY FOR THE BOARD

R. Casadei, Counsel 


INTRODUCTION

The Veteran had active duty service in the Army from May 1979 to May 1982, and from June 1996 to December 1996. He also served on active duty in the Air Force from October 2005 to February 2006, for which he received a Combat Action Badge. He had extensive additional service in the National Guard and/or Reserves, presumably with period of active duty for training (ACDUTRA) and inactive duty for training (INACDUTRA).

This matter comes on appeal before the Board of Veterans' Appeals (Board) from a March 2010 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Winston-Salem, North Carolina. In May 2015, the Veteran verified his change of address to Canada and his claims file was transferred to the RO in Pittsburgh, Pennsylvania, as a foreign case. 

In a January 2014 submission, the Veteran indicated that he desired to personally appear before the Board to provide testimony concerning his appeal. In a March 2014 communication, the Veteran indicated that he did not wish to appear at a hearing and requested that the Board consider his case on the evidence of record. The Veteran's request for a hearing is therefore deemed to be withdrawn. 38 C.F.R. § 20.704 (e) (2016).

The issue of entitlement to service connection for a TBI was previously remanded by the Board in January 2016 in order to obtain an addendum opinion regarding the nature and etiology of the claimed TBI. treatment records and to obtain VA examinations for the Veteran's liver and sinus disabilities. This was accomplished, and the claim was readjudicated in a June 2016 supplemental statement of the case. For this reason, the Board concludes that that the Board's remand orders have been substantially complied with, and it may proceed with a decision at this time. See Dyment v. West, 13 Vet. App. 141, 146-47 (1999) (remand not required under Stegall v. West, 11 Vet. App. 268 (1998), where the Board's remand instructions were substantially complied with), aff'd, Dyment v. Principi, 287 F.3d 1377 (Fed. Cir. 2002).

This appeal was processed using the Veterans Benefits Management System (VBMS). In evaluating this case, the Board has also reviewed the "Virtual VA" system to ensure a complete assessment of the evidence.

The issues of (1) an effective date prior to March 8, 2016 for the grant of a 70 percent rating for PTSD; (2) an effective date prior to March 8, 2016 for the grant of a TDIU; and (3) an effective date prior to March 8, 2016 for the grant of basic eligibility to Dependents' Educational Assistance are addressed in the REMAND portion of the decision below and are REMANDED to the Agency of Original Jurisdiction (AOJ).


FINDING OF FACT

The weight of the evidence of record shows that the Veteran does not have any currently diagnosed residuals of a TBI.


CONCLUSION OF LAW

The criteria for service connection for residuals of a TBI are not met. 38 U.S.C. A . §§ 1110, 5107 (West 2014); 38 C.F.R. § 3.303 (2016).






REASONS AND BASES FOR FINDING AND CONCLUSION

Duties to Notify and Assist

The Veterans Claims Assistance Act of 2000 (VCAA) and implementing regulations imposes obligations on VA to provide claimants with notice and assistance. 38 U.S.C.A. §§ 5102, 5103, 5103A, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2016). The notice requirements of VCAA require VA to notify the claimant of what information or evidence is necessary to substantiate the claim; what subset of the necessary information or evidence, if any, the claimant is to provide; and what subset of the necessary information or evidence, if any, the VA will attempt to obtain. 

The United States Court of Appeals for Veterans Claims (Court) issued a decision in the appeal of Dingess v. Nicholson, 19 Vet. App. 473 (2006), which held that the notice requirements of 38 U.S.C.A. § 5103(a) and 38 C.F.R. § 3.159(b) apply to all five elements of a service connection claim, including the degree of disability and the effective date of an award. Those five elements include: (1) veteran status; 
(2) existence of a disability; (3) a connection between a veteran's service and the disability; (4) degree of disability; and (5) effective date of the disability. 

In a timely letter dated in October 2009, the RO provided notice to the Veteran regarding what information and evidence is needed to substantiate a claim for service connection, as well as what information and evidence must be submitted by the Veteran and what evidence VA would obtain. The notice included provisions for disability ratings and for the effective date of the claim. 

The Veteran's service treatment records, post-service treatment records, and the Veteran's statements are associated with the claims file. The Veteran was also afforded a VA examination in October 2014 with addendum opinions provided in September 2015 and June 2016. To that end, when VA undertakes to provide a VA examination or obtain a VA opinion, it must ensure that the examination or opinion is adequate. Barr v. Nicholson, 21 Vet. App. 303, 312 (2007). As discussed in detail below, the Board finds that the medical opinion dated in June 2016 is adequate. The VA nexus opinion considered all the pertinent evidence of record, the Veteran's reported in-service injuries, and provided a complete rationale for the opinions stated. 

Significantly, the Veteran and his representative have not identified, and the record does not otherwise indicate, any additional existing evidence that is necessary for a fair adjudication of the claim that has not been obtained. Hence, no further notice or assistance to the Veteran is required to fulfill VA's duty to assist in the development of the claim. Smith v. Gober, 14 Vet. App. 227 (2000), aff'd 281 F.3d 1384 (Fed. Cir. 2002); Dela Cruz v. Principi, 15 Vet. App. 143 (2001).

Service Connection Laws and Regulations

Service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by active military, naval, or air service. 38 U.S.C.A. 
§§ 1110, 1131; 38 C.F.R. § 3.303(a). Service connection may be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d). Only chronic diseases listed under 38 C.F.R. § 3.309(a) (2015) are entitled to the presumptive service connection provisions of 38 C.F.R. § 3.303(b). Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013). 

The term "active military, naval or air service" is further defined as (1) active duty or a period of ACDUTRA during which the individual concerned was disabled or died from a disease or injury incurred or aggravated in line of duty, and (2) any period of INACDUTRA during which the individual concerned was disabled or died from an injury incurred or aggravated in line of duty. See 38 U.S.C.A. § 101 (24). Service connection for disability arising from INACDUTRA is permitted only for injuries, not diseases, incurred or aggravated in the line of duty, (with the exceptions for acute myocardial infarction, a cardiac arrest, or a cerebrovascular accident, not pertinent here). See Brooks v. Brown, 5 Vet. App. 484, 485 (1993).

Establishing service connection generally requires (1) medical evidence of a current disability; (2) medical or, in certain circumstances, lay evidence of in-service incurrence or aggravation of a disease or injury; and (3) medical evidence of a nexus between the claimed in-service disease or injury and the present disability. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004). The U.S. Court of Appeals for Veterans Claims (Court) has held that "Congress specifically limits entitlement for service-connected disease or injury to cases where such incidents have resulted in a disability. In the absence of proof of a present disability there can be no valid claim." Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992); see also Rabideau v. Derwinski, 2 Vet. App. 141, 143-44 (1992).

In rendering a decision on appeal the Board must analyze the credibility and probative value of the evidence, account for the evidence which it finds to be persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the claimant. Gabrielson v. Brown, 7 Vet. App. 36, 39-40 (1994); Gilbert v. Derwinski, 1 Vet. App. 49, 57 (1990). Competency of evidence differs from weight and credibility. Competency is a legal concept determining whether testimony may be heard and considered by the trier of fact, while credibility is a factual determination going to the probative value of the evidence to be made after the evidence has been admitted. Rucker v. Brown, 10 Vet. App. 67, 74 (1997); Layno v. Brown, 6 Vet. App. 465, 469 (1994); see also Cartright v. Derwinski, 2 Vet. App. 24, 25 (1991) ("although interest may affect the credibility of testimony, it does not affect competency to testify").

Generally, the degree of probative value which may be attributed to a medical opinion issued by a VA or private treatment provider takes into account such factors as its thoroughness and degree of detail, and whether there was review of the claims file. See Prejean v. West, 13 Vet. App. 444, 448-9 (2000). Also significant is whether the examining medical provider had a sufficiently clear and well-reasoned rationale, as well as a basis in objective supporting clinical data. See Bloom v. West, 12 Vet. App. 185, 187 (1999); Hernandez-Toyens v. West, 11 Vet. App. 379, 382 (1998); see also Claiborne v. Nicholson, 19 Vet. App. 181, 186 (2005) (rejecting medical opinions that did not indicate whether the physicians actually examined the veteran, did not provide the extent of any examination, and did not provide any supporting clinical data). The Court has held that a bare conclusion, even one reached by a health care professional, is not probative without a factual predicate in the record. Miller v. West, 11 Vet. App. 345, 348 (1998).

A significant factor to be considered for any opinion is the accuracy of the factual predicate, regardless of whether the information supporting the opinion is obtained by review of medical records or lay reports of injury, symptoms and/or treatment, including by a veteran. See Harris v. West, 203 F.3d 1347, 1350-51 (Fed. Cir. 2000) (examiner's opinion based on accurate lay history deemed competent medical evidence in support of the claim); Kowalski v. Nicholson, 19 Vet. App. 171, 177 (2005) (holding that a medical opinion cannot be disregarded solely on the rationale that the medical opinion was based on history given by the veteran); Reonal v. Brown, 5 Vet. App. 458, 461 (1993) (holding that the Board may reject a medical opinion based on an inaccurate factual basis).

When all the evidence is assembled, VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with the veteran prevailing in either event, or whether a preponderance of the evidence is against a claim, in which case, the claim is denied. 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102.

Service Connection Analysis for TBI

The Veteran asserts that he sustained two episodes of head trauma during service, the first occurring in 1981 during a physical altercation, and the second occurring in 1997 as a result of an altitude malfunction while performing a parachuting jump. 

Service treatment records document that the Veteran sustained an injury after being "smashed in the face," without a loss of consciousness, in November 1981 during a period of active duty service. 

The second episode - which appears to have been on duty with the National Guard when not on active duty - is reported to have occurred in January 1997 while performing a parachute jump, but is not reflected in the service treatment records. However, an August 2009 lay statement from B. T., who served with the Veteran in 1997, indicated that he remembered the Veteran being disoriented and "incoherent" following an Airborne operation conducted during unusually high winds. This individual also recalled field medics treating the Veteran for a concussion or similar injury. Service personnel records confirm that the Veteran made 49 jumps over his military career, which includes both National Guard and active duty; and such record show that the Veteran jumped from a C-130 airplane on January 25, 1997. 

Based on this evidence, the Board finds that the Veteran sustained two separate head injuries in two distinct and separate periods of service. Nonetheless, the Board finds that the weight of the evidence is against a finding of any currently diagnosed TBI residuals. Because the Veteran is not shown to have TBI residuals, the nature and import of his duty status in 1997 warrants no further analysis herein.

Post-service VA treatment records include a March 2007 VA neuropsychological evaluation, which reflected a diagnosis of cognitive disorder, not otherwise specified (NOS). Further, it was indicated that the Veteran had a lower than expected performance in categorical verbal fluency, verbal learning, motor functioning, and verbal intellectual abilities; as well as a history of blunt head trauma with brief loss of consciousness in 1997 and a fight in 1981 which resulted in a broken nose, ruptured left ear drum without loss of consciousness. Although the VA have attributed a number of his symptoms, to include memory loss and cognitive impairment, to his cognitive disorder NOS the VA clinical neuropsychologist specifically ruled out TBI. 

In a June 2007 VA psychological evaluation (in Virtual VA), the VA psychologist discussed the Veteran's medial history, to include the two in-service head injuries. After an interview with the Veteran and after conducting psychiatric testing, the VA psychiatrist indicated that the results of the evaluation were consistent with diagnoses of PTSD and Major Depressive Disorder. These determinants, rather than his history of a traumatic brain injury, were judged as the "mostly likely cause of his emotional distress and variability in test results." Further, it was expected that the Veteran would have less complaints concerning concentration as his emotional distress subsided.

The evidence also includes an October 2014 VA TBI examination, during which time the examiner reviewed the Veteran's claims file and medical history, paying particular attention to the November 1981 clinical report documenting the Veteran's injuries after he was hit in the head, as well as the July 1997 medical examination report, which was silent for any head injuries, concussion or additional sequelae. The examiner also reviewed the remaining post-service treatment records, to include the March 2009 neuropsychological evaluation. During the evaluation, the Veteran reported to experience dizziness, noting that he often loses his balance, as well as symptoms of memory loss, difficulty recalling information, confusion, and slowness of thought/delayed reaction time. Based on his review of the records and an evaluation of the Veteran, the examiner determined that the claimed condition was less likely than not incurred in or caused by the claimed in-service injury, event or illness. In support of this opinion, the examiner indicated that not all exposures, jolts, or blows to the head caused head injuries, and not all head injuries caused brain injury or concussion. Further, it was noted that "no current, proximate-to-events documented, medical evidence of an index TBI diagnosis or evaluation, on/about the dates of the self-reported service-related exposures, to include the closed head injury; only the self-reports by the Veteran, and/or re-iterations of such, by other evaluating or treating clinicians, or interested parties." According to the examiner, although the Veteran had documented evidence of a closed head injury, he did not have a diagnosis of a concussion or TBI. 

As originally discussed in the April 2015 remand order, the Board finds that the October 2014 VA examination lacks probative value. Specifically, the Board finds that it is unclear as to what the examiner meant in finding that a "closed head injury" event was supported by the Veteran's situation. The examiner also did not explained why the Veteran's reported symptoms of memory loss, confusion, difficulty learning new things, poor concentration, slowness of thoughts, headaches, and balance problems throughout the years, as well as during the evaluation, were not sufficient to support a diagnosis of TBI and/or residuals of a TBI.

The October 2014 VA examiner was asked to provide an addendum opinion, which was obtained in September 2015. Specifically, the examiner stated the following: "I am unable to respond to the posed question as there is no diagnosis of TBI. As I am not a Psychologist or Psychiatrist I am also unable to respond to the question on what symptoms are related to his service-connected PTSD, nor to the question of whether or not the Veteran's self-described symptoms can be attributed to the service-related PTSD."

The evidence also includes a January 2016 private psychological evaluation from Dr. D. R. In her evaluation, it was noted that the Veteran had diagnoses of PTSD and major depressive disorder. Further, it was indicated that the Veteran did not have a current diagnosed TBI. However, the Veteran did suffer head trauma in service and therefore it was "possible" that some of his difficulties with concentration and memory were related to an "as-yet undiagnosed TBI." The Board finds that this evidence lacks probative value as the statement by Dr. D. R. is speculative and inconclusive. See Obert v. Brown, 5 Vet. App. 30, 33 (1993); see also Beausoleil v. Brown, 8 Vet. App. 459, 463 (1996); Libertine v. Brown, 9 Vet. App. 521, 523 (1996) (a physician's statement framed in terms such as "may" or "could" is not probative.) Warren v. Brown, 6 Vet. App. 4, 6 (1993).

The case was referred in June 2016 to a VA neuropsychologist in order to obtain an opinion regarding the nature of the Veteran's claimed TBI residuals. The examiner indicated that the Veteran's claims file was reviewed. Regarding the November 1981 altercation, the examiner indicated that service records were silent for potential sequelae of concussion or TBI. Instead, it was specifically noted that there was no loss of consciousness or focal (neurological) signs of impairment. The examiner indicated that none of the notes reflect a suggestion or diagnosis of a
concussion or TBI or possible post-concussive symptoms. Overall, and per the criteria for diagnosis of a TBI, the examiner opined that it was less likely than not that the Veteran's November 1981 altercation caused or resulted in a concussion or TBI. Given that there was no diagnosis for concussion or a TBI, no sequelae or residuals of the incident were indicated.

Regarding the January 1997 parachute jump injury, the examiner noted that the Veteran had reported a brief loss of consciousness, post-traumatic amnesia, and post-traumatic confusion and disorientation immediately following the January 1997 injury. Based on these reports by the Veteran and the buddy statement from his former Sergeant, the examiner noted that the in-service injury resulted in a concussion or TBI pursuant to the current Department of Defense criteria for diagnosis. Nonetheless, the examiner stated that, according to current medical literature, residuals of a TBI or post-concussion symptoms develop acutely and typically stabilize, or more commonly resolve completely, within days to weeks of the injury without permanent residuals. The examiner cited the American Academy of Clinical Neuropsychology, which indicated that most people who incurred a
Concussion or TBI recovered completely with no lasting symptoms or ill effects from the injury.

Consistent with the medical research cited above, the examiner stated that the October 2014 VA examination and medical opinion in September 2015 were silent for possible chronic sequelae or residuals of TBI. Following evaluations with multiple providers, the Veteran was never diagnosed with post-concussive symptoms, post-concussive syndrome, or post-concussive disorder. Per
evaluations with neuropsychologists in June 2007, and multiple behavioral
health providers, the onset of the Veteran's self-described problems (e.g., cognitive difficulties, interpersonal problems, changes in mood) had been consistently indicated as occurring prior to his January 1997 injury with no discernable change immediately following injury. Accordingly, consistent with standard recovery from concussion/TBI, the Veteran's January 1997 concussion and/or TBI was more likely than not to have resolved completely without chronic sequelae or residuals. As such, the examiner opined that, at the current time, the Veteran was less likely than not to have any current residuals of a TBI. Instead, the examiner noted that, rather than TBI, the Veteran's reported symptoms (to include cognitive difficulties) had been repeatedly attributed to his service-connected PTSD disability and Major Depressive Disorder. Accordingly, his current cognitive concerns and self-described symptoms were more likely than not to be solely attributable to service-connected chronic PTSD and Major Depressive Disorder.

The Board finds the medical opinions provided by the June 2016 VA examiner to be highly probative as to whether the Veteran has any currently diagnosed residuals of a TBI. The examiner is a neuropsychologist and reviewed the claims file. Moreover, the examiner fully discussed the Veteran's in-service injuries and medical history in detail. He also provided several opinions supported by well-reasoned rationales and medical literature. See Prejean, 13 Vet. App. 448-9. 

Moreover, the Board cannot ignore the fact that the Veteran continued on with military service after both of these injuries, including discrete periods of active duty. The service treatment and personnel records reveal no chronic sequelae that could be associated with TBI, and this history is consistent with the medical evidence discussed in detail above.

To the extent the Veteran alleges his symptoms are a residual of a TBI, as a lay person, he has not shown that he has specialized training sufficient to render such an opinion. See Jandreau v. Nicholson, 492 F.3d 1372, 1376-77 (Fed. Cir. 2007) (noting general competence to testify as to symptoms but not to provide medical diagnosis). In this regard, whether a head injury results in a TBI and whether certain complaints are a residual of the TBI is a complex medical question requiring medical expertise. Accordingly, the Veteran's opinion as to the diagnosis of a TBI or the etiology of his various complaints is not competent medical evidence. The Board finds the opinions of the June 2016 VA neuropsychologist to be of significantly greater probative value than the Veteran's lay assertions.

Upon review of all the evidence of record, both lay and medical, the Board finds that VA examiners and clinicians have acknowledged the Veteran's in-service head injuries, but after extensive evaluation and objective testing, have determined that the Veteran has no residual disability related to a TBI. Although he has been noted to have cognitive difficulties (e.g., concentration problems and mild memory loss), changes in mood (e.g., anger, irritability), and interpersonal problems, these symptoms have been associated with his service-connected psychiatric disability, for which he is currently rated at 70 percent for PTSD. Importantly, cognitive symptoms are contemplated in the rating criteria for his service-connected PTSD disability. 

For the reasons set forth above, the Board finds the preponderance of the competent and probative evidence indicates the Veteran does not suffer from residuals of a traumatic brain injury. Accordingly, service connection is denied.


ORDER

Service connection for residuals of TBI residuals is denied. 


REMAND

In a May 2016 rating decision, the RO granted the following claims: (1) a 70 percent disability rating for PTSD effective March 8, 2016; (2) a TDIU effective March 8, 2016; and (3) basic eligibility to Dependents' Educational Assistance effective March 8, 2016.

In a May 2016 statement, the Veteran's representative requested "reconsideration" of the effective dates assigned in the May 2016 rating decision. The Board construes this statement as a timely notice of disagreement with the May 2016 rating decision. Accordingly, the RO should issue a statement of the case as to those issues. Manlicon v. West, 12 Vet. App. 238 (1999).

Accordingly, the case is REMANDED for the following action:

Issue a Statement of the Case on the issues of (1) an effective date prior to March 8, 2016 for the grant of a 70 percent rating for PTSD; (2) an effective date prior to March 8, 2016 for the grant of a TDIU; and (3) an effective date prior to March 8, 2016 for the grant of basic eligibility to Dependents' Educational Assistance. Only if the Veteran perfects an appeal should the claim be certified to the Board.

The Veteran has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).




______________________________________________
JONATHAN B. KRAMER
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs